IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JEFFREY DOUGLAS PIERCE,

        Plaintiff,

vs.                              Case No. 10-1307-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does
not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not
to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
<u>Barnhart v. Thomas</u>, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir.
1993).   At step five, the burden shifts to the Commissioner to
show that the claimant can perform other work that exists in the
national economy.  <u>Nielson</u>, 992 F.2d at 1120; <u>Thompson v.
Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993).   The Commissioner
meets this burden if the decision is supported by substantial
evidence.  <u>Thompson</u>, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

**II.  History of case**

On June 15, 2009, administrative law judge (ALJ) Melvin B.
Werner issued his decision (R. at 19-27).   Plaintiff alleges that
he has been disabled since July 31, 2005 (R. at 19).   Plaintiff
is insured for disability insurance benefits through December 31,
2008 (R. at 21).   At step one, the ALJ found that plaintiff has
not engaged in substantial gainful activity since the alleged
onset date of disability (R. at 21).   At step two, the ALJ found
that plaintiff had the following severe impairments: diabetes

4

mellitus with peripheral neuropathy, osteoarthritis of the knees
and back, hypothyroidism on replacement therapy, and non-cardiac
chest pain (R. at 21).  At step three, the ALJ determined that
plaintiff's impairments do not meet or equal a listed impairment
(R. at 22).  After determining plaintiff's RFC (R. at 22), the
ALJ found at step four that plaintiff is unable to perform past
relevant work (R. at 25).  At step five, the ALJ found that
plaintiff could perform other jobs that exist in significant
numbers in the national economy (R. at 26-27).  Therefore, the
ALJ concluded that plaintiff was not disabled (R. at 27).

**III.  Did the ALJ err in his consideration of the opinions of
plaintiff's treating physician, Dr. Miller?**

Dr. Miller provided a medical source statement-physical on
February 27, 2009 in which he opined that plaintiff was limited
as follows:

> 1.  Plaintiff can lift or carry less than 5
> pounds.
>
> 2.  Plaintiff can stand/walk continuously for
> 15 minutes and for less than 1 hour in an 8
> hour day.
>
> 3.  Plaintiff can sit continuously for 15
> minutes and for less than 1 hour in an 8 hour
> day.
>
> 4.  Plaintiff can never kneel, crawl or see-
> far acuity.
>
> 5.  Plaintiff can occasionally climb,
> balance, stoop, crouch, reach, handle,
> finger, feel, see-near acuity, and see-depth

perception.

6.  Plaintiff should avoid any extreme cold
or heat, wetness/humidity, dust/fumes, or
hazards, and should avoid moderate heights.

7.  Plaintiff needs to lie down or recline to
alleviate symptoms several times daily.

8.  Plaintiff's medication causes a decrease
in concentration, persistence, pace or other
limitations.

(R. at 377-379).

The ALJ provided the following analysis of Dr. Miller's

opinions:

Finally in reaching this decision, the
undersigned has considered the residual
functional assessment submitted by Dr. Miller
on February 27, 2009. It is noted that the
assessment was completed at the request of
counsel and is severely restrictive.
Basically in an 8 hour day, the claimant can
sit for 15 minutes at a time for less than an
hour and stand or walk for 15 minutes at a
time for less than an hour with the need for
rest. This is not supported in the medical
records or the daily activities. At the
hearing, the claimant was noted to sit
without problems for approximately 50 minutes
before the issue was raised and he reported
the need to stand. The claimant has also
reported that he has not sought recent or
ongoing treatment. Therefore, Dr. Miller's
medical opinion is not supported by the
record as a whole and as such cannot be given
controlling weight. The undersigned notes
that there is no reason to recontact the
doctor for additional evidence or
clarification as the assessment was
"adequate" for consideration; however, it is
found to be insufficiently supported by the
records as a whole as noted in 20 CFR
404.1512(e) and 416.912(e).

(R. at 25).

The ALJ made the following RFC findings in this case:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as dermed in 20 CFR 404.1567(a) and 416.967(a) in that he is limited to lifting or carrying 10 pounds, sitting about 30 minutes at a time for 6 hours in an 8 hour work day, standing or walking about 15 minutes at a time for about 2 hours in an 8 hour work day with the need to alternate sit/stand every 30 minutes, no climbing of ladders, ropes or scaffolding and occasional climbing of stairs with occasional grasping and handling.

(R. at 22).   The ALJ indicated that he was in general agreement with the opinions of the state agency assessment prepared by Dr. Hausheer on December 27, 2007 (R. at 25, 364-371).  The court would note that the ALJ's RFC findings are more restrictive than the assessment prepared by Dr. Hausheer, but are less restrictive than the assessment prepared by Dr. Miller.[1]

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating

---

[1]The ALJ's RFC findings included manipulative limitations and the need to alternate sitting and standing every 30 minutes; neither of these limitations were contained in Dr. Hausheer's assessment (R. at 22, 364-370).

physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating

physician opinion is not given controlling weight, the ALJ must

nonetheless specify what lesser weight he assigned the treating

physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083

(10th Cir. 2004).  A treating source opinion not entitled to

controlling weight is still entitled to deference and must be

weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

<u>Watkins</u>, 350 F.3d at 1301.

    First, both the ALJ decision (R. at 25) and defendant's

brief (Doc. 15 at 5) specifically point out that the report from

Dr. Miller was prepared at the request of plaintiff's attorney.

However, absent a legal or evidentiary basis, the ALJ cannot

conclude that a report from a treating physician was an act of

courtesy to a patient.  <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121

(10th Cir. 2004).  Furthermore, the purpose for which a report was obtained does not provide a legitimate basis for rejecting it.  A report procured by a claimant is entitled to no less weight than a report procured by the Commissioner.  <u>Hinton v. Massanari</u>, 13 Fed. Appx. 819, 823-824 (10th Cir. July 3, 2001). The mere fact that the report was completed at the request of counsel, of itself, has no more or less relevance than the fact that the state agency assessment was prepared at the request of the Commissioner.

Second, the ALJ discounted the opinion of Dr. Miller because plaintiff had not sought recent or ongoing treatment (R. at 25; Doc. 15 at 6).  Defendant's brief specifically indicated that plaintiff sought little or no treatment in 2007-2009, which defendant argued was inconsistent with his allegations of disability (Doc. 15 at 8).  However, not mentioned by the ALJ was the following testimony from the plaintiff at the hearing:

> Q (by attorney): There's quite a break in the medical record from a couple years back to the present time. Could you explain why that's like that, sir?
>
> A (by plaintiff): Yes, I've, I know what I need to have done and I just simply do not have the money so I've been continuing the medications, which is hard enough financially, but I can't afford anymore Doctor visits, and tests, and that kind of thing. I just, I'm, I'm penniless.
>
> Q: Do you have a State of Kansas medical card?

A: I applied and they said I'm not destitute.

Q: You're asset rich?

A: Yes.

Q: All right. So you're unable to get support from Kansas for medical concerns?

A: Yes.

Q: And you're unable to provide for yourself at this point in time?

A: Correct.

(R. at 39-40).

The 10th Circuit, relying on the case of Thompson v. Sullivan, 987 F.2d 1482, 1489-90 (10th Cir. 1993), has repeatedly held that the inability to pay may justify a claimant's failure to pursue or seek treatment. Threet v. Barnhart, 353 F.3d 1185, 1190 n.7 (10th Cir. 2003); Norris v. Apfel, 215 F.3d 1337 (table), 2000 WL 504882 at *8 (10th Cir. Apr. 28, 2000); Smith v. Apfel, 149 F.3d 1191 (table), 1998 WL 321176 at *4 (10th Cir. June 8, 1998); Snead v. Callahan, 129 F.3d 131 (table), 1997 WL 687660 at *4 (10th Cir. Oct. 31, 1997); see also Eason v. Chater, 951 F. Supp. 1556, 1562 (D. N.M. 1996)(claimant should not be penalized for failing to seek treatment that they cannot afford); Hockenhull v. Bowen, 723 F. Supp. 555, 557 (D. Colo. 1989) (evidence of nontreatment is of little weight when claimant's failure to seek medical treatment can be attributed to their inability to pay for such treatment).

11

While failure to seek treatment may be probative of severity, the ALJ has a basic duty of inquiry to ask the plaintiff why he/she did not seek treatment, or why it was sporadic.  Kratochvil v. Barnhart, 2003 WL 22176084 at *5 (D. Kan. Sept. 17, 2003).  Similarly, SSR 96-7p states the following:

> However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p, 1996 WL 374186 at *7 (emphasis added); Madron v. Astrue, 311 Fed. Appx. 170, 178 (10th Cir. Feb. 11, 2009).  The fact than an individual may be unable to afford treatment and may not have access to free or low-cost medical service is a legitimate excuse.  Madron, 311 Fed. Appx. at 178; SSR 96-7p, 1995 WL 374186 at *8.

The ALJ clearly relied on the fact that plaintiff had not sought recent or ongoing treatment when discounting the opinions of Dr. Miller.  However, the ALJ did not comply with the governing case law and SSR 96-7p when he failed to consider plaintiff's testimony that he could not afford medical treatment.

Third, the ALJ indicated that he was not giving controlling weight to the opinions of Dr. Miller.  In light of the fact that the state agency assessment is inconsistent with the opinions of

Dr. Miller, the ALJ had a legitimate basis for not according
controlling weight to the opinions of Dr. Miller.  However, the
ALJ did not what indicate what weight, if any, he was according
to Dr. Miller's opinions.[2]  In Krauser v. Astrue, the court held
as follows:

> Even if a treating opinion is not given
> controlling weight, it is still entitled to
> deference; at the second step in the
> analysis, the ALJ must make clear how much
> weight the opinion is being given (including
> whether it is being rejected outright) and
> give good reasons, tied to the factors
> specified in the cited regulations for this
> particular purpose, for the weight assigned.
> Watkins, 350 F.3d at 1300-01.  If this is not
> done, a remand is required.  Id. at 1301
> [quotation of language in SSR 96-2p
> omitted]...a deficiency as to the conditions
> for controlling weight *raises the question* of
> how much weight to give the opinion, it does
> not resolve the latter, distinct inquiry.
> Langley v. Barnhart, 373 F.3d 1116, 1120
> (10th Cir. 2004).
>
> ..........
>
> ...the ALJ's assessment of Dr. Lambert's
> opinion is patently inadequate for the
> distinct reason that it ends halfway through
> the required two-step analysis: the ALJ
> simply concluded that "Dr. Lambert's opinion
> ... cannot be given controlling weight" and
> then *said no more about it* [citation
> omitted]. Just as in Watkins, the ALJ failed

---

[2]Although plaintiff argued that the opinions of Dr. Miller
should be accorded controlling weight, plaintiff also cited to a
provision in SSR 96-2p which states that a finding that a
treating source's medical opinion is not entitled to controlling
weight does not mean that the opinion is rejected.  It may still
be entitled to deference and be adopted by the adjudicator (Doc.
12 at 24).

> to articulate the weight, if any, he gave Dr.
> Lambert's opinion, and he failed also to
> explain the reasons for assigning that weight
> or for rejecting the opinion altogether....
> We must remand because we cannot meaningfully
> review the ALJ's determination absent
> findings explaining the weight assigned to
> the treating physician's opinion.
> 350 F.3d at 1301.

Krauser v. Astrue, 638 F.3d 1324, 1330-1331 (10th Cir.

2011)(emphasis in original).  As in Krauser, in the case before

the court, the ALJ simply concluded that Dr. Miller's opinion

cannot be given controlling weight, and then he said no more

about it.  For the reasons set forth in Krauser, a remand is

required in order for the ALJ to explain the weight accorded to

the opinions of Dr. Miller.

     The need to explain the weight accorded to Dr. Miller is

especially important in light of the fact that the ALJ made RFC

findings that were more generally restrictive than those in the

state agency assessment, but less restrictive than those in Dr.

Miller's assessment.  For example, the ALJ limited plaintiff to

occasional grasping and handling (R. at 22).  The state agency

assessment opined that plaintiff had no manipulative limitations

(R. at 367).  However, Dr. Miller found that plaintiff was

limited in his ability to reach, handle, finger and feel (R. at

378).  The ALJ provided no explanation for adopting some of the

manipulative limitations contained in Dr. Miller's report, but

not others.

14

Fourth, the ALJ indicated that there was no reason to recontact Dr. Miller because the assessment was adequate for consideration, but was insufficiently supported by the records as a whole (R. at 25).   However, the ALJ stated that some of Dr. Miller's opinions were "not supported in the medical records or daily activities" (R. at 25, emphasis added).   Furthermore, defendant, in his brief, stated that "Dr. Miller did not provide medically acceptable clinical and laboratory findings or recent office progress notes to support his extreme limitations" (Doc. 15 at 6, emphasis added).

In the case of Robinson v. Barnhart, 366 F.3d 1078 (10th Cir. 2004), the court held as follows:

> If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); see also McGoffin, 288 F.3d at 1252 (holding ALJ had obligation to recontact treating physician if validity of his report open to question). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir.2001).

366 F.3d at 1084 (emphasis added).  The court in <u>Robinson</u> then stated that <u>if the ALJ concluded that the treatment provider failed to provide sufficient support for his conclusions about plaintiff's limitations, the severity of those limitations</u>, the effect of those limitations on her ability to work, or the effect of prescribed medication on her ability to work, <u>the ALJ should have recontacted the treatment provider for clarification of his opinion before rejecting it</u>.  366 F.3d at 1084 (emphasis added). In addition, SSR 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, <u>if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion</u>.

1996 WL 374183 at *6 (emphasis added).  The findings of the ALJ and defendant's arguments indicate that Dr. Miller should have been recontacted according to the case law and rulings set forth above.  On remand, the ALJ shall comply with these criteria in determining whether or not to recontact the treatment providers.

 In light of the numerous errors by the ALJ in his analysis of the opinions of Dr. Miller, this case shall be remanded for further hearing.  On remand, the ALJ must, pursuant to SSR 96-8p, make RFC findings that include a narrative discussion describing how the evidence supports each conclusion, citing specific

16

medical facts and nonmedical evidence.

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is reversed and remanded pursuant to sentence four
of 42 U.S.C. § 405(g) for further proceedings consistent with
this memorandum and order.

Dated this 8th day of August 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge